CARMEN NADAL, VIUDA DE DEL MORAL, demandante y apelada,
*v.* JOSÉ MURATTI, demandado y apelante.

No. 3440.—*Visto:* Febrero 5, 1925.  *Resuelto:* Mayo 9, 1925.

1. *Injunction*—DEMANDA DE *Injunction*—INCONGRUENCIA ENTRE LO ALEGADO Y PROBADO.—Habiéndose alegado, como un extremo de una demanda de *injunction,* que el demandado obstaculizó una servidumbre de paso y apareciendo de la prueba de la demandante que el derecho al paso no se impidió sino que simplemente se regularizó, procede declarar sin lugar la demanda en cuanto a ese extremo.

2. SERVIDUMBRES—CREACIÓN, EXISTENCIA Y TERMINACIÓN—SERVIDUMBRE DE PASO —PRESCRIPCIÓN DE TIEMPO INMEMORIAL.—No cabe reconocerse una servidum-

bre de paso por prescripción de tiempo inmemorial, cuando lo que se prueba es que un camino fué abierto del 1893 al 1894 y que el paso por el mismo fué meramente tolerado.

3. Servidumbres—Creación, Existencia y Terminación—Servidumbre de Paso Modo de Adquirir—Título.—A partir del año 1890, fecha en que empezó a regir el Código Civil, las servidumbres de paso sólo pueden adquirirse a virtud de título.

Sentencia de *Angel Acosta, J.* (Mayagüez), declarando con lugar la demanda, con costas. *Revocada, desestimándose la demanda, sin costas.*

*Alfredo Arnaldo Sevilla,* abogado del apelante; *José Sabater,* abogado de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Alegando que el demandado le había impedido el uso de dos caminos, solicitó la demandante la expedición de un auto de *injunction.* Se expidió un auto preliminar y juzgando luego definitivamente el caso, la corte lo resolvió en contra del demandado. La sentencia dictada reconoce la existencia de dos servidumbres de paso impuestas sobre la finca del demandado a favor de dos fincas de la demandante. El demandado apeló señalando en su alegato la comisión de seis errores, que estudiaremos una vez que dejemos expuesto cómo fué planteado el debate y cómo apreciadas las pruebas y aplicada la ley por la corte sentenciadora.

Alegó la demandante que es dueña de dos fincas, una de cinco cuerdas, donde está enclavada la plaza de la hacienda ''Flora,'' colindante por todos sus lados con terrenos de Muratti, y otra de cincuenta y cinco cuerdas que linda por el Norte con un camino vecinal, por el Sur con el río y por el Este y Oeste con tierras de Muratti. Alegó además la demandante que su finca de cinco cuerdas se comunica con la carretera de Mayagüez a San Germán por un camino que pasa por dentro de los terrenos de Muratti en una extensión de cien metros y que ''existe desde tiempo inmemorial'' y que su otra finca de cincuenta y cinco cuerdas se comunica con la de cinco por otro camino de unos

doscientos metros que también pasa por dentro de tierras de Murattti y que viene usando "por tiempo tan inmemorial que rebasa los límites de la memoria de las personas más ancianas del lugar." Y alegó por último la demandante que el demandado le impidió el uso de ambos caminos construyendo un portón de madera frente a la carretera que cerró sin permitir el paso a persona alguna y levantando una cerca donde empieza el camino que de la finca de cinco cuerdas conduce a la de cincuenta y cinco, todo ello sin derecho alguno y maliciosamente.

Contestó el demandado negando que hubiera actuado sin derecho y maliciosamente. Explicó los hechos así: En cuanto al camino que comunica la finca de cinco cuerdas con la carretera, alegó que fué abierto en 1870 al ser instalados los establecimientos de la hacienda Flora y que frente a la carretera existió un portón hasta 1900 que se cerraba con llave; teniendo Muratti, padre del demandado, una llave y los dueños de los establecimientos otra, y que lo que él ahora ha hecho es reconstruir el portón habiendo entregado su llave al mayordomo de la demandante. Y en cuanto al otro camino negó su existencia desde tiempo inmemorial y que el demandado tuviera derecho al mismo, alegando que el paso fué meramente tolerado desde la zafra de 1893 a 1894. La demanda se interpuso en 1922.

Celebrada la vista, la corte, como hemos dicho, dictó sentencia favorable a la demandante basándose en una opinión que, copiada en lo pertinente, dice:

"La Corte estima probado, por la apreciación de la evidencia, en el acto de la vista, que el camino que va desde la finca de cinco cuerdas a la carretera de Mayagüez a San Germán, data o se abrió en el año 1870, al ser instalados los Establecimientos de la hacienda 'Flora' sitos en dicha porción de cinco cuerdas; e igualmente la Corte estima probado y por virtud de la misma apreciación, que el camino que va de la finca de cinco cuerdas a la de la de cincuenta y cinco cuerdas, fué abierto, data, desde la zafra de 1893 a 1894, por tolerancia de don Francisco Muratti, causante del demandado Don José Muratti.

"Como se ve, y por las alegaciones del demandado, no se niega el derecho o servidumbre de paso, pues se reconoce y alega que si bien se colocaron cercas, empalizadas, portones y se cerraron con candados, una de las llaves de dicho camino se entregó al Mayordomo de la demandante para que pudiera usarlo libremente y cuya llave se dice fué entregada a Don Santos López, mayordomo que tenía en la finca la demandante doña Carmen Nadal viuda de Del Moral.

"La Corte estima probado, que dichos caminos han venido utilizándose de buena fe y por un período de tiempo, que la memoria de los testigos que han declarado y que algunos de ellos tienen más de 70 años, lo hacen de un uso inmemorial y por lo que, visto el caso de Nido y Cía. v. Albir Alicea, reportado en el tomo 27 pág. 34 D.P.R. y rigiéndose este caso, como el citado, por la legislación anterior al Código Civil, el demandante ha podido invocar e invoca a su favor el uso inmemorial de dichos caminos, para demostrar su derecho a pasar por ellos y probar, como ha probado, por tal testimonio de dichos testigos, tal uso inmemorial.

"Alega el demandado, que esta servidumbre de paso, como comprendida en el art. 546 del Código Civil Revisado, equivalente al art. 539 del Código Civil de España, sólo puede adquirirse en virtud de título y no por prescripción como alega la demandante, pero la Corte es de opinión que este caso se rige y la legislación aplicable, es la anterior a la promulgación y publicidad del actual Código Civil y que la legislación aplicable es la ley de Partidas y muy especialmente la ley 14 del título 31 de la Partida Tercera, y la ley 15 de dicho título y Partida, que autorizan la adquisición de dichas servidumbres por el uso de tiempo inmemorial:

" 'ante dezimos, que quien las quisiere auer por esta razón, ha menester, que haya vsado dellas, ellos, o aquellos de quien las ouieron, tanto tiempo de que non se puedan acordar los omes, quanto ha que lo començaron a vsar.'

"Varios testigos declararon que conocían esos caminos, esa servidumbre de paso, desde la época de la LIBERTAD DE LOS ESCLAVOS, cuyo hecho ocurrió en el año de 1873, es decir, hace más de cincuenta años y algunos testigos que así declararon, tienen 84, 75 y 62 años de edad.''

Señala en su alegato la parte apelante la comisión de seis errores. Prescindiremos del estudio del sexto que se

refiere a la inspección ocular que debió practicarse a juicio del demandado, y del quinto que trata de una cuestión técnica sobre disolución del *injunction* preliminar, y estudiaremos conjuntamente los cuatro restantes que versan sobre los hechos probados y la ley aplicable.

Examinada la opinión de la corte sentenciadora obsérvase en seguida que existe incongruencia entre las conclusiones contenidas en el párrafo primero de los que dejamos transcritos y el tercero, cuarto y quinto. Esa misma confusión se advierte en muchas de las declaraciones de los testigos; pero un estudio detenido de ellas nos lleva a concluir que la verdad está contenida en el párrafo primero. Se trata de dos casos enteramente distintos.

[1] Con respecto a la existencia de la servidumbre de paso de la finca de cinco cuerdas a la carretera, no hay cuestión. La reconoce el propio demandado. En el año de 1870 se resolvió establecer una fábrica de azúcar en aquel sitio que pertenece a la jurisdicción de Hormigueros, muy cerca de las de Cabo Rojo y San Germán, y para ello se separaron cinco cuerdas que quedaban enclavadas dentro de la finca de un señor Dávila, antecesor de Muratti. Era absolutamente necesario darle salida y se le dió hasta comunicarse con la carretera de Mayagüez a San Germán por dentro de las tierras de Dávila, hoy de Muratti. Sólo es necesario dilucidar lo relativo al portón. ¿Se obstaculizó con él el derecho al paso? A nuestro juicio la prueba es terminante en el sentido de que simplemente se regularizó. Sólo fué reconstruído. Un testigo de la demandante, su hijo y apoderado Francisco del Moral, reconoció que se entregó una llave del portón al mayordomo de la hacienda y que no se impidió el paso.

Siendo ello así, no habiéndose probado los hechos en que se basó la petición de *injunction*, claro es que no debió haber sido declarado con lugar en cuanto a ese extremo.

[2 y 3] Veamos ahora lo que existe con respecto a la servidumbre de paso desde la finca de cinco cuerdas a la de cincuenta y cinco. De la misma prueba de la parte demandante aparece que el camino o callejón por donde se ha venido pasando fué abierto después de 1889 en que según la propia demandante adquirió la finca de cincuenta y cinco cuerdas la sociedad Moral, González y Cía. de quien trae causa. La prueba del demandado fija con exactitud la fecha de la zafra del 1893 a 1894 en que a virtud de haberse quemado unas cañas, el padre del demandado permitió al mayordomo de Moral, González y Cía. que se condujeran para molerse en seguida por aquel sitio permitiéndose el paso desde entonces por mera tolerancia.

. Puede encontrarse en la prueba de la demandante cierta vaga referencia a que en 1893 lo que se hizo fué cambiar el sitio del paso, pero en manera alguna esa referencia es bastante para basar en ella el reconocimiento de una servidumbre.

El año de 1890 es de importancia decisiva porque con él comenzó a regir el Código Civil y desde su vigencia la servidumbre de que se trata sólo pudo adquirirse a virtud de título y aquí ni siquiera se ha invocado ese medio de adquisición.

El caso de *Nido & Cía* v. *Alicea*, 27 D.P.R. 34, que cita en su opinión el juez sentenciador, no es igual al presente. Allí la misma parte a quien podía perjudicarle, admitió que era aplicable la legislación anterior al Código Civil y además de la prueba de testigos ancianos que declararon sobre el uso inmemorial, presentáronse las admisiones de uno de los antiguos dueños del predio sirviente. Aquí la misma corte de distrito declaró probado que el camino fué abierto, data, de la zafra de 1893 a 1894, no hubo admisiones y las propias declaraciones de los testigos de la demandante analizadas cuidadosamente no sostienen su contención, esto es, el uso inmemorial.

Parece conveniente decir que la finca de cincuenta y cinco cuerdas, según consta de la demanda misma, colinda con un camino vecinal que va al barrio de Duey, pudiendo, aunque dando un rodeo que alarga la distancia, transportarse por dicho camino los frutos a la carretera y entrar por ella a los establecimientos de la hacienda situados en las cinco cuerdas.

Claro es que el callejón que se venía usando resultaba más fácil. El hecho del paso por mera tolerancia se repite constantemente en las fincas de Puerto Rico. Las crecientes de ríos y quebradas, el mal estado de ciertos caminos vecinales, los atrechos, las amistades, el establecimiento de escuelas y comercios en determinados sitios, el temor de provocar conflictos o disgustos, el deseo de favorecer a los convecinos acortando distancias y facilitando el tráfico, y otras muchas circunstancias podrían señalarse como causa para ello. Seguramente fué una situación semejante y la idea de dar fijeza y certidumbre a un derecho para uno y a un gravamen para otro de tal importancia, la que obligó al legislador español a variar la ley y al legislador puertorriqueño a no alterar la variación. Así el paso que meramente se permite subsiste generalmente mientras de él no se abusa, como las pruebas demuestran que se abusó en este caso. Y así cuando se desea obtener un derecho absoluto y para siempre, se sabe que hay que ir al contrato, a la adquisición del derecho mediante la compensación apropiada, garantizando la ley hipotecaria por medio de la inscripción el derecho que se adquiera en cuanto a terceros. A partir del 1890 las situaciones vagas, indefinidas en esta clase de servidumbres, desaparecieron en Puerto Rico.

*Por virtud de todo lo expuesto debe revocarse la sentencia apelada y dictarse otra desestimando la demanda sin especial condenación de costas.*